DEBRA WONG YANG
United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
CRAIG H. MISSAKIAN
Assistant United States Attorney
Public Corruption & Civil Rights Section
California Bar Number: 125202
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0757
    Facsimile: (213) 894-6436
    E-Mail: craig.missakian@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. __06 - 164__ |
| | ) |
| Plaintiff, | ) PLEA AGREEMENT FOR DEFENDANT |
| | ) MARTIN GREGORY LUDLOW; EXHIBIT |
| v. | ) |
| | ) |
| MARTIN GREGORY LUDLOW, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

1.   This constitutes the plea agreement between MARTIN GREGORY LUDLOW ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the investigation of the embezzlement of money and property belonging to the Service Employees International Union ("SEIU") Local 99 (the "Union" or "Local 99").  This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

ENTER ON ICMS

MAR - 3 2006

## PLEA

2.  Defendant gives up the right to indictment by a grand jury and agrees to plead guilty to a one-count information in the form attached to this agreement, or a substantially similar form.

## NATURE OF THE OFFENSE

3.  In order for defendant to be guilty of the charge set forth in the one-count information, which charges a conspiracy under Title 18, United States Code, Section 371 to violate Title 29, United States Code, Section 501(c), the following must be true: (1) defendant agreed with one or more persons to commit a crime, namely embezzlement of the Union's money or property, in violation of Title 29, United States Code, Section 501(c); (2) defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and (3) one or more of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  Defendant admits that defendant is, in fact, guilty of this offense as described in the information.

## PENALTIES AND RESTITUTION

4.  The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371 is: 5 years imprisonment; a 3-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.  Defendant further understands that defendant will be required to pay full restitution to the victim of the

offense.  Defendant agrees to make full restitution for the losses caused by defendant's activities.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the amount of restitution is not restricted to the amounts alleged in the count to which defendant is pleading guilty and may include losses arising from charges not prosecuted pursuant to this agreement as well as all relevant conduct in connection with those charges.  The parties currently believe that the applicable amount of restitution is $36,492 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.  Defendant further agrees that defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

5.  Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be sentenced or returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.  Defendant understands that by pleading guilty and pursuant to Title 29, United States Code, Section 504, he will be prohibited from serving as an officer or in any other position described by that section in or for any labor organization,

including but not limited to, the Los Angeles County Federation of Labor, other than in his capacity as a member, for a period of 13 years after conviction or after the end of any term of imprisonment, whichever is later, unless otherwise ordered by the Court consistent with paragraphs 16(d)-(g) and 18 below. Defendant further understands that by pleading guilty, defendant may also be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

7.   Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

8.   Defendant MARTIN GREGORY LUDLOW, his counsel of record John Vandevelde, and the USAO agree and stipulate that the statement of facts provided below is true.  This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement and to establish the sentencing guideline factors set forth in paragraph 11 below.  It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to the

government that relate to that conduct.

Service Employees International Union ("SEIU") Local 99 ("the Union" or "Local 99") was a labor organization engaged in an industry and activity affecting commerce within the meaning of the Labor Management Reporting and Disclosure Act ("LMRDA") and as those terms are defined in Title 29, United States Code, Section 402(a)-(c), (j) and (i), whose headquarters was located in the City of Los Angeles, California.

In 2002 and 2003, Janett Humphries ("Humphries") was an officer and a person employed by Local 99, that is, President, within the meaning of the LMRDA and Title 29, United States Code, Sections 402(n) and 501(c). As an officer of SEIU Local 99, defendant Humphries occupied a position of trust in the Union and owed a fiduciary duty, under Title 29, United States Code, Section 501(a), to the Union and its members as a group. This duty required her to, among other things, hold the Union's money and property solely for the benefit of the Union and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder.

In mid-2002, defendant launched his campaign for a seat on the Los Angeles City Council. Six other candidates also joined the race. To win the seat outright, one candidate needed to receive 50%-plus-one of the vote in the March 4, 2003 primary election. If no candidate received the required number of votes, then the top two vote getters would face each other in a run-off

election with the seat going to the candidate receiving the most votes. Defendant finished second in the March 4th primary, but ultimately won the seat in the run-off.

In connection with the primary election, defendant formed a campaign committee -- "Ludlow for City Council" -- and registered the committee with the California Secretary of State as required by law. A campaign committee is subject to certain state and local regulations, including the obligation to timely report all contributions, whether by check or in kind, made to the campaign. Defendant also began to assemble a campaign staff that would include a day-to-day campaign manager, a computer and communications manager, a volunteer coordinator, and office workers.

To help defendant run a more effective campaign against his six opponents, Humphries and defendant agreed to use Union funds to pay defendant's campaign workers by arranging to have certain of defendant's campaign workers placed on the Union's payroll. The Union would then pay the campaign workers even though they worked for the campaign and not the Union.

As the campaign progressed, defendant contacted Humphries and asked her to have specific employees placed on the Union's payroll. Defendant and Humphries would then arrange to have the employees complete the paperwork necessary to place them on the Union's payroll, such as Internal Revenue Service Form W-4. The campaign workers also would provide copies of their driver's licenses and/or social security cards. This paperwork was then

placed into the Union personnel files.  The campaign workers that Humphries and defendant placed on the Union's payroll were as follows: G.A., M.P., K.S., G.L., C.T., M.V., and A.V.

While Humphries arranged to have defendant's campaign workers placed on the Union's payroll, she took direction from defendant about whom to place on the payroll and about how much to pay each worker.  Local 99 paid salaries to G.A., M.P., K.S., G.L., C.T., and M.V.  For a seventh campaign worker, A.V., Local 99 did not pay her salary, but placed A.V. on the Union's payroll and paid insurance premiums for medical and dental insurance coverage on her behalf.

In or about March 2003, defendant and Humphries tried to hide the payments to defendant's campaign workers through fabricated documents and changes in Union files and records.  For example, defendant instructed campaign worker G.A. to sign a back-dated contract which gave the false impression that the money G.A. had received from the Union related to work done as a consultant for Humphries.  Defendant also instructed G.A. to prepare back-dated memoranda that discussed various election or state budget-related issues.  G.A. prepared this "work product" after the fact as part of the cover-up.  Defendant also instructed M.P. to prepare work product after the fact and deliver it to Humphries to give the false impression that he too had done work for the Union.

In addition to the funds used to pay defendant's campaign workers, defendant also received a cellular telephone that

belonged to the Union.  Humphries directed her assistant, R.C., to obtain the telephone and it was provided to defendant. Defendant used the telephone exclusively for personal and campaign purposes and the Union paid the telephone bills.

In total, Local 99 paid defendant's campaign workers approximately $31,275 in salary and paid approximately $1,820 in insurance premiums.  The Union also paid approximately $3,397 for the cellular telephone that defendant used.  Both defendant and Humphries knew that having the Union pay defendant's campaign workers and cellular telephone bills violated the $500 limit on campaign contributions imposed by City of Los Angeles Charter & Administrative Code, Vol. 1, Art. VI, § 470(c)(3).  Defendant and Humphries also knew that these unlawful expenditures were not authorized by the Union's constitution or bylaws.  Defendant further believed that, if asked, neither the Union's Board of Trustees nor its Executive Board would have approved these unlawful expenditures.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

9.    By pleading guilty, defendant gives up the following rights:

a)  The right to persist in a plea of not guilty.

b)  The right to a speedy and public trial by jury.

c)  The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial.

d)   The right to be presumed innocent and to have the

burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e)    The right to confront and cross-examine witnesses against defendant.

f)    The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

SENTENCING FACTORS

10.    Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence.  Defendant understands that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

11.  Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 6 | [U.S.S.G. § 2B1.1] |
| Specific Offense Characteristics (loss amount $36,492) | : | +6 | [U.S.S.G. § 2B1.1(b)(1)(D)] |
| Adjustments (acceptance) | : | -2 | [U.S.S.G. § 3E1.1] |

Subject to paragraph 13, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, from either the applicable offense level or criminal history category, be imposed.

12.  There is no agreement as to defendant's criminal history or criminal history category.

13.  The stipulations in this agreement do not bind either the United States Probation Office or the Court.  Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case.

<u>DEFENDANT'S OBLIGATIONS</u>

14.  Defendant agrees that he will:

a) Plead guilty as set forth in this agreement.

b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) Not knowingly and willfully fail to: (i) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay.

g) To enter guilty pleas in the case entitled <u>People of the State of California v. Martin Ludlow</u>, pursuant to the case settlement reached with the Los Angeles County District Attorney's Office prior to entering guilty pleas pursuant to this agreement.  To enter a stipulation in <u>In Re Martin Ludlow</u> and <u>In Re Ludlow for City Council Committee</u> pursuant to the settlement reached with the City of Los Angeles Ethics Commission prior to entering guilty pleas pursuant to this agreement.

15.  Defendant further agrees to cooperate fully with the USAO, the Los Angeles County District Attorney's Office, the U.S. Department of Labor - Office of Labor Racketeering and Fraud

11

Investigations, the U.S. Department of Labor - Office of Labor Management Standards, the Federal Bureau of Investigation, the Metropolitan Transit Authority, Office of Inspector General, and, as directed by the USAO, any other federal, state, or local law enforcement agency. This cooperation requires defendant to:

a)    Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b)    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c)    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

16.    Defendant further hereby acknowledges and agrees that:

a)    Conviction of the crime described in this agreement disqualifies him by operation of law from serving in the capacities described in Title 29, United States Code, Sections 504 and 1111.

b)    As a condition of this plea that he will not be employed or serve in any of the capacities described in 29 U.S.C. §§ 504 and 1111 involving positions in any labor organization or employee benefit plan; or service as a labor relations consultant to any labor organization, employer, or employer organization; or service as a consultant or adviser to any labor organization or any employee benefit plan. This disqualification applies whether

or not such organizations are subject to the Labor Management Reporting and Disclosure Act or the Employee Retirement Income Security Act.  Defendant further agrees that subject to subparagraphs 16(d)-(g) and paragraph 18 below he will not be employed or serve in such capacities for a period which extends until 13 years after the date of sentence or the end of any imprisonment, including imprisonment upon revocation of any period of supervisory release, resulting from such sentence, whichever is the later date.

c)    That he will not be employed or serve in any office or employment with a labor organization subject to the Civil Service Reform Act of 1978 or the Foreign Service Act of 1980 as described in 29 C.F.R. § 458.36.  Defendant further agrees that, subject to subparagraphs 16(d)-(g) and paragraph 18 below, he will not be employed or serve in such capacities for a period which extends until 13 years after the date of sentence or the end of any imprisonment, including imprisonment upon revocation of any period of probation or supervisory release, resulting from such sentence, whichever is the later date.

d)    Defendant will not contest and will seek no relief from the employment disabilities described herein prior to 5 years following the date of sentence or the end of imprisonment whichever is the later date.  Such relief includes, but is not limited to, reduction by the sentencing court of the length of disability in accordance with the terms of Sections 504(a) and 1111(a) or exemption from the disability with respect to

13

employment in a particular prohibited capacity pursuant to Sections 504(a)(B) and 1111(a)(B).

e) When defendant is permitted to seek relief from the employment disability referred to above, he must demonstrate to the sentencing court that he has been rehabilitated and can be trusted to serve in all prohibited capacities described in Sections 504 or 1111 such that defendant will not endanger any organization or its members or participants protected by such statutes.

f) He will seek no further relief from the disabilities described in paragraphs 16(a)-(c) above other than requests contemplated in this agreement.

g) When seeking relief from the employment disabilities referred to above, defendant will give notice of such request 30 days prior to any hearing on such request by certified mail addressed as follows:

            (i)   U.S. Department of Labor
                  Howard Shapiro, Attorney
                  Office of Inspector General
                  Office of Labor Racketeering and Fraud
                  Investigations
                  200 Constitution Ave., NW Room S-5014
                  Washington D.C. 20210

            (ii)  United States Attorney
                  United States Attorney's Office for the
                  Central District of California
                  312 N. Spring Street, 12th Floor
                  Los Angeles, CA 90012

## THE USAO'S OBLIGATIONS

17. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

14

a) To abide by all sentencing stipulations contained in this agreement.

b) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

c)    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371) and civil proceedings, not to further prosecute defendant for violations of 29 U.S.C. § 501(c) arising out of defendant's conduct described in the stipulated factual basis set forth in paragraph 8 above and defendant's conspiracy to embezzle the money and property of Local 99.  The USAO further agrees not to further prosecute defendant for violations of federal criminal law arising out of defendant's conduct regarding the selection, hiring, and compensation of L.S.C. as a community outreach program consultant by RAD Jefferson, LLC for the Metropolitan Transit Authority West Los Angeles Transportation Facility Division 6 Project in or about March-September 2004.  Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct

in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, the amount of restitution, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors.

d)    To recommend that defendant be sentenced at the low end of the applicable Sentencing Guidelines range provided that the total offense level as calculated by the Court is 10 or higher and provided that the Court does not depart downward in offense level or criminal history category (except pursuant to, and to the extent requested in, a motion by the USAO for a downward departure under U.S.S.G. § 5K1.1).  Notwithstanding its agreement to recommend the low end of the Sentencing Guidelines range, the USAO is free to recommend any conditions of confinement, including imprisonment, if the total offense level falls within Zone B or C of the sentencing table.

e)    Not to offer as evidence in its case-in-chief in the above-captioned case or any other prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any case that may be brought against defendant by the USAO, any statements made by defendant or documents, records, or tangible evidence provided by defendant pursuant to this agreement.  Defendant agrees, however, that the USAO may use such statements, documents, records, and tangible evidence: (1) to obtain and pursue leads to other evidence, which

16

evidence may be used for any purpose, including any prosecution of defendant, (2) to cross-examine defendant should defendant testify, or to rebut any evidence, argument or representations made by defendant or a witness called by defendant in any trial, sentencing hearing, or other court proceeding, and (3) in any prosecution of defendant for false statement, obstruction of justice, or perjury.

f)    Not to use any information provided by defendant pursuant to this agreement against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, and to recommend to the Court that such information not be used in determining the sentence to be imposed.  Defendant understands, however, that information provided by defendant pursuant to this agreement will be disclosed to the probation office and the Court, and that the Court may use this information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

g)    In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

h)    If the USAO determines, in its exclusive judgment, that defendant has both complied with his obligations under paragraphs 14, 15, and 16 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant

17

to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and, so long as the guideline range after a reduction pursuant to U.S.S.G. § 5K1.1 falls within Zone A of the guidelines, to recommend a non-custodial sentence.

i)    To recommend to the Court that the sentence imposed in this case run concurrently with any sentence imposed in the case entitled <u>People of the State of California v. Martin Ludlow</u> presently pending in Los Angeles County Superior Court; and that defendant be permitted to serve any sentence imposed in this case and in the aforementioned case in federal custody.

18.    The USAO hereby undertakes that it will not oppose defendant's petition to the sentencing court for reduction of the length of disability in all prohibited capacities in accordance with the terms of Sections 504(a) and 1111(a), provided that the following conditions have been met:

a) Defendant has ceased all prohibited employment or service as required by Sections 504 and 1111, including but not limited to, ceasing employment or service for the Los Angeles County Federation of Labor or any successor organization;

b)    Defendant has refrained from any violation of state or federal criminal law since the commission of the crime described in this agreement;

c)    Defendant has satisfied other conditions imposed on him by the sentencing court or this agreement, including those imposed by paragraphs 14, 15, and 16 above; and

d)    A minimum period of 5 years have passed since the date of sentence or end of imprisonment, whichever is later.

19.    The United States Department of Labor has advised by letter through its authorized representative that it has no objection to the terms of this agreement as it relates to Sections 504 and 1111.  A true and correct copy of the letter is attached hereto as Exhibit A.

DEFENDANT'S UNDERSTANDINGS REGARDING SUBSTANTIAL ASSISTANCE

20.    Defendant understands the following:

a)    Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b)    Nothing in this agreement requires the USAO or any other prosecuting or law enforcement agency to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c)    Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d)    At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes substantial assistance.  The decision whether defendant has provided

substantial assistance rests solely within the discretion of the USAO.

e)    The USAO's determination of whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies.

<u>BREACH OF AGREEMENT</u>

21.    If defendant, at any time between the execution of this agreement and the completion of defendant's cooperation pursuant to the agreement or defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, whichever is later, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if the defendant knowingly in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes his own role, or the role of another, in criminal conduct, he will have breached this agreement.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of its obligations under this agreement.  In particular:

a)    The USAO will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty.

b)    The USAO will no longer be bound by any agreements regarding criminal prosecution, and will be free to prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to prosecute pursuant to this agreement.

c)    The USAO will be free to prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d)    The USAO will no longer be bound by any agreement regarding the use of statements, documents, records, tangible evidence, or information provided by defendant, and will be free to use any of those in any way in any investigation, prosecution, or civil or administrative action.  Defendant will not be able to assert either (1) that those statements, documents, records, tangible evidence, or information were obtained in violation of the Fifth Amendment privilege against compelled self-incrimination, or (2) any claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements, documents, records, tangible evidence, or information provided by defendant before or after the signing of this agreement, or any leads derived therefrom, should be inadmissible.

22.  Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was not filed as a result of this agreement, then:

21

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

## LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

23. Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, (b) the Court in determining the applicable guideline range does not depart upward in offense level or criminal history category and determines that the total offense level is 10 or below, and (c) the Court imposes a sentence within or below the range corresponding to the determined total offense level and criminal history category. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of

conviction. Notwithstanding the foregoing, defendant retains the ability to appeal the court's determination of defendant's criminal history category and the conditions of probation or supervised release imposed by the court, with the exception of the following: standard conditions set forth in district court General Orders 318 and 01-05; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24. The USAO gives up its right to appeal the Court's sentence, provided that (a) the Court in determining the applicable guideline range does not depart downward in offense level or criminal history category (except by a downward departure in offense level pursuant to, and to the extent requested by, the USAO in a motion under U.S.S.G. § 5K1.1), (b) the Court determines that the total offense level is 10 or above prior to any departure under U.S.S.G. § 5K1.1, and (c) the Court imposes a sentence within or above the range corresponding to the determined total offense level (after any downward departure under U.S.S.G. § 5K1.1) and criminal history category.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

25. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may, in its exclusive discretion, ask the Court to void the entire plea agreement and vacate defendant's guilty plea, with both the USAO and defendant being released from all of their obligations under this agreement.

23

## COURT NOT A PARTY

26.   The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations.  Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  No one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

27.   Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel.  Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28.   The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

//

//

24

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED TO AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

DEBRA WONG YANG
United States Attorney

_____          3/2/06
CRAIG H. MISSAKIAN                        Date
Assistant United States Attorney


I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

_____          3/2/06
MARTIN GREGORY LUDLOW                      Date
Defendant


I am MARTIN GREGORY LUDLOW's attorney.  I have carefully discussed every part of this agreement with my client.  Further,

25

I have fully advised my client of his rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this agreement.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____          _3/2/06_____
JOHN VANDEVELDE                            Date
Counsel for Defendant
MARTIN GREGORY LUDLOW

26

# EXHIBIT A

**U.S. Department of Labor**

Office of the Inspector General
Office of Investigations
71 Stevenson Street, Suite 720
San Francisco, California 94105



March 1, 2006

Memorandum For:

Craig H. Missakian, Assistant United States Attorney
United States Attorney's Office
Public Corruption & Civil Rights Section
Central District of California

From:

*Marita Janiga*
Marita Janiga, Special Agent in Charge
Office of Labor Racketeering & Fraud Investigations

Our office has reviewed the proposed plea agreement in the case of *United States of America v. Gregory Martin Ludlow*. Specifically, we have reviewed the sections relating to debarment under 29 U.S.C. 504 and 29 U.S.C. 1111.

Based on the information contained in the plea agreement, the Office of Inspector General (OIG) has no objections to the terms of this agreement as it relates to debarment. The OIG has also been informed that, based upon the circumstances of this case, the U.S. Department of Labor, Office of Labor-Management Standards (OLMS), has no objections to the terms of this agreement as it relates to debarment under 29 U.S.C. 504.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 06-_____ |
| Plaintiff, | ) | I N F O R M A T I O N |
| v. | ) | [18 U.S.C. § 371: Conspiracy] |
| MARTIN GREGORY LUDLOW, | ) | |
| Defendant. | ) | |
| | ) | |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At all times material to this Information:

1.    Service Employees International Union ("SEIU") Local 99 ("the Union" or "Local 99") was a labor organization engaged in an industry and activity affecting commerce within the meaning of the Labor Management Reporting and Disclosure Act ("LMRDA") and as those terms are defined in Title 29, United States Code, Section 402(a)-(c), (j) and (i), whose headquarters was located in the City of Los Angeles, California.

CHM:chm

2. Co-conspirator Janett Humphries ("Humphries") was an officer and a person employed by Local 99, that is, President, within the meaning of the LMRDA and Title 29, United States Code, Sections 402(n) and 501(c).

3. As an officer of SEIU Local 99, co-conspirator Humphries occupied a position of trust in the Union and owed a fiduciary duty, under Title 29, United States Code, Section 501(a), to the Union and its members as a group. This duty required her to, among other things, hold the Union's money and property solely for the benefit of the Union and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder.

4. Defendant MARTIN GREGORY LUDLOW ("LUDLOW") was a candidate in the March 2003 primary election and May 2003 run-off election for a seat on the Los Angeles City Council from the 10th District. Defendant LUDLOW finished second in the March 4, 2003 election, but won the seat in the run-off election.

5. The Introductory Allegations are hereby incorporated by reference into each count of this Information.

[18 U.S.C. § 371]

A.    OBJECT OF THE CONSPIRACY

Beginning in or about September 2002, and continuing to at least March 2003, in Los Angeles County, within the Central District of California, defendant MARTIN GREGORY LUDLOW ("LUDLOW") and co-conspirator Janett Humphries ("Humphries"), and others known and unknown to the United States Attorney, conspired and agreed with each other to embezzle, steal, and willfully and unlawfully abstract and convert to their own use and the use of others the money, funds, property and assets of Local 99 in violation of Title 29, United States Code, Section 501(c).

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

1.    In mid-2002, defendant LUDLOW launched a campaign to become an elected member of the Los Angeles City Council.  Six other candidates also ran for the same seat on the Los Angeles City Council.  To win the seat outright, one of the seven candidates needed to obtain 50%-plus-one of the vote in the March 4, 2003 primary election.  If no candidate received a majority of the vote, then the top two vote-getters would face each other in a run-off election with the seat going to the candidate receiving the most votes.

2.    Beginning in or about September 2002 and continuing to at least March 2003, defendant LUDLOW hired individuals to work on his campaign, including a day-to-day campaign manager, a

3

volunteer coordinator, a computer and communications director, and office workers (the "LUDLOW campaign workers").

3. To assist defendant LUDLOW's campaign against the other candidates, defendant LUDLOW and co-conspirator Humphries agreed that the Union would place certain of the campaign workers on the Union's payroll. Under the agreement, the LUDLOW campaign workers would work on LUDLOW's campaign, but be paid by the Union.

4. As new campaign workers were hired, certain of the workers were directed to Local 99 to be placed onto the Union's payroll. The LUDLOW campaign workers were directed to complete employment-related forms, such as Internal Revenue Service Form W-4, and provide certain documents, such as social security cards and driver's licenses, to be placed in personnel files maintained by the Union.

5. Co-conspirator Humphries approved placing the LUDLOW campaign workers on the Union's payroll, knew that they really worked on defendant LUDLOW's campaign, and directed her assistant, R.C., to complete the required paperwork to place the campaign workers on the Union's payroll. Co-conspirator Humphries took direction from defendant LUDLOW regarding which campaign workers would be placed on the Union's payroll and how much each worker would be paid.

6. In addition to the Union funds used to pay defendant's campaign workers, defendant also received a cellular telephone that belonged to the Union. Co-conspirator Humphries directed her assistant, R.C., to obtain the telephone and then co-

4

conspirator Humphries provided the telephone to defendant LUDLOW. Defendant LUDLOW used the telephone exclusively for personal and campaign purposes, but the Union paid the telephone bills.

7. In all, at the direction of co-conspirator Humphries, Local 99 placed six of defendant LUDLOW's campaign workers on its payroll, and paid health insurance premiums on behalf of a seventh LUDLOW campaign worker. Local 99 paid approximately $31,275 in salary to the LUDLOW campaign workers and approximately $1,820 in insurance premiums. The Union also paid approximately $3,397 for the cellular telephone that was provided to defendant LUDLOW.

8. Co-conspirator Humphries and defendant LUDLOW knew that having the Union pay his campaign workers and cellular telephone bills violated the $500 limit on campaign contributions imposed by the City of Los Angeles Charter & Administrative Code. Co-conspirator Humphries and defendant LUDLOW also knew that these illegal expenditures were not authorized by the Union's constitution and bylaws and defendant LUDLOW further believed that, if asked, Local 99's Board of Trustees and/or Executive Board would not have authorized these illegal expenditures.

9. In or about March 2003, defendant LUDLOW and co-conspirator Humphries attempted to cover up the use of Union funds to pay the LUDLOW campaign workers by falsifying documents and altering Union records. Specifically, at Humphries's direction, R.C. created false payroll change forms for each LUDLOW campaign worker on the Union's payroll. Defendant LUDLOW also created, or caused to be created, false consulting

5

agreements between the Union and M.P. and G.A.  Defendant LUDLOW also directed LUDLOW campaign workers M.P. and G.A. to prepare false work product to make it appear that they had performed work for the Union.  Co-conspirator  Humphries also caused the Union's bookkeeper to change the status of the LUDLOW campaign workers from employee to consultant in the computer records of the Union.

C.    OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, co-conspirator Humphries and defendant LUDLOW, and others known and unknown to the Grand Jury, committed overt acts within the Central District of California including but not limited to the following:

1.    In or about September 2002, defendant LUDLOW contacted co-conspirator Humphries and asked if the Union would provide health insurance benefits to campaign worker A.V.

2.    In or about September 2002, co-conspirator Humphries provided A.V. with the forms needed to enroll A.V. into the Union's medical and dental plans and directed A.V. to complete the forms and take them to Humphries's assistant, R.C.

3.    Defendant LUDLOW directed campaign worker M.V. to contact the Union for the purpose of being placed on the Union's payroll.

4.    In or about December 2002, defendant LUDLOW hired campaign worker K.S. and paid her in cash to avoid listing her on the campaign's payroll.  Later, co-conspirator Humphries contacted defendant LUDLOW and told him to have K.S. contact her assistant, R.C., to be placed on the Union's payroll.

6

5. In or about December 2002, defendant LUDLOW directed campaign worker G.A. to contact co-conspirator Humphries's assistant, R.C., for the purpose of being placed on the Union's payroll.

6. In or about December 2002, either defendant LUDLOW, or someone acting at his direction, gave co-conspirator Humphries a list of campaign positions that were to be placed on the Union's payroll.

7. In or about December 2002, co-conspirator Humphries gave her assistant, R.C., a list of campaign positions that were to be placed on the Union's payroll.

8. In or about December 2002, defendant LUDLOW met in person with R.C. to discuss the details of how to place certain of his campaign workers onto the Union's payroll.

9. In or about March 2003, co-conspirator Humphries instructed R.C. that the Union's files relating to the LUDLOW campaign workers needed to be "cleaned up."

10. In or about March 2003, co-conspirator Humphries directed R.C. to create false payroll change forms for the LUDLOW campaign workers.

11. In or about March 2003, at co-conspirator Humphries's direction, R.C. created a payroll change form for LUDLOW campaign worker G.A., changing his status from Union employee to "consultant" and placed the form in G.A.'s Union personnel file.

12. In or about March 2003, at co-conspirator Humphries's direction, R.C. created a payroll change form for LUDLOW campaign worker M.P., changing his status from Union employee to "analyst"

and placed the form in M.P.'s Union personnel file.

13. In or about March 2003, at co-conspirator Humphries's direction, R.C. created a payroll change form for LUDLOW campaign worker K.S., changing her status from Union employee to a worker on G.H.H.'s 2004 campaign for a seat on the Los Angeles Unified School District Board and placed the form in K.S.'s Union personnel file.

14. In or about March 2003, at co-conspirator Humphries's direction, R.C. created a payroll change form for LUDLOW campaign worker G.L., changing her status from Union employee to a worker on G.H.H.'s 2003 campaign for a seat on the Los Angeles Unified School District Board and placed the form in G.L.'s Union personnel file.

15. In or about March 2003, defendant LUDLOW directed G.A. to sign a contract that had been back-dated to December 16, 2002 and that purported to be a consulting agreement between G.A. and the Union.

//
//
//
//
//
//
//
//
//
//

16.    In or about March 2003, at defendant LUDLOW's direction, G.A. created back-dated memoranda that purported to be work product done by G.A. under the false consulting agreement.


DEBRA WONG YANG
United States Attorney

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division


CRAIG H. MISSAKIAN
Assistant United States Attorney
Public Corruption & Civil Rights Section

<u>CERTIFICATE OF SERVICE</u>

I, <u>Sandy Ear</u>, declare:

That I am a citizen of the United States that my business address is Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of California, at whose direction the service by mail described in this Certificate was made; that on <u>March 3, 2006</u>, I deposited in the United States Courthouse at 312 North Spring Street, Los Angeles, California, in the above-entitled action, in an envelope,

a copy of: **PLEA AGREEMENT FOR DEFENDANT MARTIN GREGORY LUDLOW; EXHIBIT**

addressed to:    John Vandevelde
655 South Hope Street, 13th Floor
Los Angeles, CA 90017

at his last known address, at which place there is a delivery service by United States mail.

This Certificate is executed on <u>March 3, 2006</u> at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct and resident or employed in Los Angeles County, California.

SANDY EAR