CROWELL & MORING LLP
John D. Vandevelde (State Bar No. 67881)
jvandevelde@crowell.com
515 South Flower Street, 40th Floor
Los Angeles, California 90071-2258
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

Attorneys for Defendant
Martin Gregory Ludlow

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>MARTIN GREGORY LUDLOW,<br><br>Defendant. | CASE NO. CR 06-164-R<br><br>**NOTICE OF MOTION; MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND PLEA AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS**<br><br>Hearing Date; September 26, 2011<br><br>Time: 1:30 pm<br><br>Place: Honorable Manuel L. Real, Spring Street -- Courtroom 8 |

TO: ANDRE' BIROTTE JR., THE UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO ASSISTANT UNITED STATES ATTORNEY LAWRENCE S. MIDDLETON,

PLEASE TAKE NOTICE that on September 26, 2011, at 1:30 pm, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable

1

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

Manuel L. Real, Courtroom 8, 2nd Floor, 312 North Spring Street, Los Angeles, California, defendant Martin Gregory Ludlow will move for relief from the prohibitions provided for in 29 U.S.C. §§ 504 and 1111 and in the plea agreement in this case on serving in certain capacities with a labor organization or employee benefit plan or other organization because of his conviction in this case for a conspiracy to violate 29 U.S.C. § 501.

This motion is based on the attached memorandum of points and authorities, declaration of Mr. Ludlow and exhibits, including the express provisions in the plea agreement in this case and the express position of the Department of Labor that is part of the plea agreement, the files and records of this case, and such argument and evidence as may be proffered to the Court.

Dated: August 25, 2011          Respectfully submitted,

CROWELL & MORING LLP


/s/ John D. Vandevelde
By: John D. Vandevelde
Attorneys for Defendant
Martin Ludlow

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     PROCEDURAL HISTORY.....................................................................................1

III.    APPLICABLE LAW AND PLEA AGREEMENT PROVISIONS .................................3

IV.     SATISFACTION OF CONDITIONS FOR RELIEF .....................................................8

        A.      Employment............................................................................................10

        B.      Community Service .................................................................................13

        C.      Financial Oversight and Stewardship .....................................................17

        D.      Acknowledgment of Responsibility and Contrition .................................19

V.      STATUTORY NOTICE COMPLIANCE ..................................................................22

VI.     CONCLUSION....................................................................................................22

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

# TABLE OF AUTHORITIES

Page(s)

STATUTES

29 U.S.C. § 501(c) ..................................................................................................3, 4

29 U.S.C. § 504 ......................................................................................................4, 5

29 U.S.C. §§ 504(a)(5)(B) and 1111(a) ...................................................................10

29 U.S.C. § 1111 .........................................................................................................5

29 U.S.C. § § 504 and 1111 ........................................................................................6

LAACTIVE-600806258.1

# TABLE OF EXHIBITS

Page

EXHBIT 1

    Judgment and Probation/Commitment Order,
        *U.S. v. Martin Gregory Ludlow*, CR 06-164-R,
        June 5, 2006 (filed June 8, 2006).........................................................................3

EXHIBIT 2

    Satisfaction of Judgment *U.S. v. Martin Gregory Ludlow*,
        CR 06-164-R, filed October 5, 2007.....................................................................3

EXHIBIT 3

    Probation Officer's Report, People v. Martin Ludlow,
        LASC BA298943, May 23, 2008 ...........................................................................3

EXHIBITS 4A

    City of Los Angeles letter to Stephen Kaufman,
        January 27, 2011, re final payment on fine...........................................................3

EXHIBITS 4B

    Stephen Kaufman letter to City of Los Angeles,
        February 28, 2011, with check, re final payment on fine ......................................3

EXHIBIT 5

    Order Terminating Probation, July 27, 2009,
        *U.S. v. Martin Gregory Ludlow*, CR 06-164-R.....................................................3

EXHIBIT 6

    Docket Sheet, People v. Martin Ludlow,
        LASC BA298943.....................................................................................................3

EXHIBIT 7

    Plea Agreement, *U.S. v. Martin Gregory Ludlow*,
        CR 06-164-R.............................................................................................................6

EXHIBIT 8

    Memorandum from OIG dated March 1, 2006.......................................................8

EXHIBIT 9

    Memorandum of Agreement, Los Angeles County Federation of Labor
        AFL-CIO and Martin Ludlow, March 3, 2006 .....................................................9

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

# TABLE OF EXHIBITS
### ("Continued")

Page

EXHIBIT 10

Docket Sheet, *People v. Janett Humphries*, LASC BA298943 ........................................... 9

EXHIBIT 11

Gilbert Vasquez letter to Court, August 15, 2011 ......................................................... 12

EXHIBIT 12

Constance L. Rice letter to Court, August 17, 2011 ...................................................... 12

EXHIBIT 13

Pamela Andrews letter to Court, August 11, 2011 ........................................................ 14

EXHIBIT 14

"U.C.L.A.'s Jonathan Franklin is in it for the long run,"
*Los Angeles Times,* August 14, 2011 ......................................................................... 15

EXHIBIT 15

Paul Knox letter to Court, August 13, 2011 ................................................................. 15

EXHIBIT 16

"He makes a difference, finds redemption,"
*Los Angeles Times,* June 22, 2008 ............................................................................ 17

EXHIBIT 17

Genethia Hudley-Hayes, Ph.D., letter to Court, August 24, 2011 ................................... 18

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Mr. Ludlow seeks relief from the federal statutory prohibitions and provisions in the plea agreement prohibiting service in certain capacities with a labor organization or employee benefit plan or other organization. Seeking such relief is permitted by statute at this time and was contemplated and agreed to in the plea agreement in this case. Further, Mr. Ludlow has complied with and successfully completed probation, restitution, payment of fines and penalties and all other requirements of all authorities involved in all three proceedings brought against him for the same conduct, has met all of the conditions in the plea agreement, has consistently demonstrated remorse and cooperated with the government, and has been fully rehabilitated. Indeed, Mr. Ludlow has been exemplary in his handling of this matter from the outset and throughout his periods of both state and federal probation.

### II.   PROCEDURAL HISTORY

Over eight (8) years ago, in May, 2003, Mr. Ludlow ran for and was elected to the Los Angeles City Council. He served as a Councilmember until June 30, 2005, when he resigned to become the Executive Secretary-Treasurer of the Los Angeles County Federation of Labor AFL-CIO ("County Fed") after Miguel Contreras, the prior Executive Secretary-Treasurer of the County Fed, unexpectedly died.

The three legal proceedings against Mr. Ludlow all arose from his 2003 campaign for election to the Los Angeles City Council. Mr. Ludlow received assistance in that campaign from a labor union, Service Employees International Union ("SEIU") Local 99, the President of which was Janett Humphries.

1

LAACTIVE-600806258.1

The same conduct gave rise to three separate simultaneous legal proceedings brought by the United States Attorney for the Central District of California ("USAO"), the Los Angeles County District Attorney ("DA"), and the Los Angeles City Ethics Commission ("LACEC"), all of whom jointly investigated this matter. The charges, in summary, consisted of:

- an administrative penalty proceeding by the LACEC for accepting excess contributions and for paying one campaign worker in cash instead of from a campaign account, *In the Matter of Martin G. Ludlow and Martin Ludlow for City Council*, CEC Case No. 2004-20;

- a state criminal proceeding in Los Angeles County Superior Court ("LASC") by the DA charging Mr. Ludlow and Ms. Humphries with a felony conspiracy based on underlying misdemeanor charges for exceeding the campaign contribution limit, as well as two other substantive misdemeanors of failing to report campaign contributions and making a cash campaign expenditure, *People v. Martin Ludlow,* LASC No. BA298943;

- and the federal felony prosecution brought by the USAO in this Court for conspiracy to convert SEIU Local 99 funds.

Mr. Ludlow cooperated in the joint investigation and entered into agreements, consisting of plea and cooperation agreements in the criminal cases and a stipulated resolution of the LACEC matter, required of him by the three agencies as part of a "package" deal. In March, 2006, over five years ago, Mr. Ludlow pled guilty to the charges in the two criminal cases and stipulated to a decision and order in the LACEC proceeding. Mr. Ludlow cooperated and ultimately testified as a prosecution witness against Ms. Humphries in her state court trial and she was convicted. Ms. Humphries thereafter pled guilty to the

charges in this Court.

Mr. Ludlow was placed on probation in both of the criminal cases and ordered to pay fines and restitution. He was ordered to pay fines in the state case, restitution in the federal case, and administrative penalties in the LACEC case. This Court ordered him to pay restitution of $36,492.00 plus a special assessment of $100.00. *See* Judgment and Probation/Commitment Order, attached as Exhibit 1. Mr. Ludlow satisfied that obligation. *See* attached Exhibit 2 (Satisfaction of Judgment in the federal case). Mr. Ludlow also completed payment of his obligations to the LASC and the LACEC. *See* Exhibits 3 (Probation Report in the state case) and 4A and 4B (correspondence and final check in the LACEC matter).

This Court also ordered that Mr. Ludlow complete 2,000 hours of community service. He completed that service.

On April 21, 2009, Mr. Ludlow's probation in the state court proceeding was completed and in July, 2009, this Court terminated his federal probation. *See* attached order of this Court and LASC docket sheet, Exhibits 5 and 6 respectively.

Thus, Mr. Ludlow has complied with all of his obligations to this Court, the LASC and the LACEC and has fulfilled his obligations under the Plea Agreement. Further, by his conduct over the last more than five years he has demonstrated responsibility, remorse and rehabilitation such that he is entitled to and should be granted the requested relief from the prohibitions that have been and remain in effect.

III.   APPLICABLE LAW AND PLEA AGREEMENT PROVISIONS

The Indictment in this case alleged a conspiracy to violate 29 U.S.C. § 501(c).[1] *See* Indictment at 3, section A. Section 501(c) provides as follows:

---

[1] Unless otherwise specified, all references to statutes herein are to Title 29 of the U.S. Code.

LAACTIVE-600806258.1

"Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both."

29 U.S.C. §501(c).

A conviction for a violation of section 501(c), including a conspiracy to violate that section, triggers certain statutory prohibitions under sections 504 and 1111. Section 504 provides in pertinent part as follows:

"No person who . . . has been convicted of . . . a violation of subchapter III or IV of this chapter [which includes section 501(c)] . . ., or conspiracy to commit any such crimes . . . , shall serve or be permitted to serve—

(1) as a consultant or adviser to any labor organization,

(2) as an officer, director, trustee, member of any executive board or similar governing body, business agent, manager, organizer, employee, or representative in any capacity of any labor organization,

(3) as a labor relations consultant or adviser to a person engaged in an industry or activity affecting commerce, or as an officer, director, agent, or employee of any group or association of employers dealing with any labor organization, or in a position having specific collective bargaining authority or direct responsibility in the area of labor-management relations in any corporation or association engaged in an industry or activity affecting commerce, or

(4) in a position which entitles its occupant to a share of the proceeds of, or as an officer or executive or administrative employee of, any entity whose activities are in whole or substantial part devoted to

---

LAACTIVE-600806258.1

providing goods or services to any labor organization, or

(5) in any capacity, other than in his capacity as a member of such labor organization, that involves decision making authority concerning, or decision making authority over, or custody of, or control of the moneys, funds, assets, or property of any labor organization . . . ."

29 U.S.C. § 504. Section 1111 provides for the same prohibition against serving in various capacities with any employee benefit plan. *See* 29 U.S.C. § 1111.

Both section 504 and 1111 have virtually identical language[2] regarding the length of the prohibition and court relief from the prohibition. The language provides for prohibition for thirteen years, reducible to three, after the later of sentencing or release from imprisonment. The statutory language is as follows:

"[No such person shall serve] during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later, unless the sentencing court on the motion of the person convicted sets a lesser period of at least three years after such conviction or after the end of such imprisonment, whichever is later, . . . unless prior to the end of such period, in the case of a person so convicted or imprisoned, . . . (B) if the offense is a Federal offense, the sentencing judge or, if the offense is a State or local offense, the United States district court for the district in which the offense was committed, pursuant to sentencing guidelines and policy statements under section 994 (a) of title 28, determines that such person's service

---

[2] The language is identical except that section 504 refers to "clauses (1) through (5)," which describe the capacities of service relating to section 504, and section 1111 refers to "paragraphs (1) through (3)," which describe the capacities of service relating to section 1111.

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

in any capacity referred to in [these statutes][3] would not be contrary to the purposes of this chapter. Prior to making any such determination the court shall hold a hearing and shall give notice of such proceeding by certified mail to the Secretary of Labor and to State, county, and Federal prosecuting officials in the jurisdiction or jurisdictions in which such person was convicted. The court's determination in any such proceeding shall be final.

29 U.S.C. § § 504 and 1111. Thus, by statute this Court is empowered to lift the statutory prohibitions provided for in sections 504 and 1111 .

However, in addition to the statutory provisions, the Plea Agreement provides that Mr. Ludlow agrees that, apart from the statutory prohibition, and subject to relief provided for in the agreement and explained below, he will not be employed or serve in certain capacities. Those include the capacities prohibited by sections 504 and 1111. *See* attached "Plea Agreement for Defendant Martin Gregory Ludlow," Exhibit 7, "Defendant's Obligations," at ¶ 16(b) at 12. The agreement also prohibits Mr. Ludlow from serving in similar capacities subject to the Civil Service Reform Act of 1978 and the Foreign Service Act of 1980. *Id.* at ¶16(c) at 13.

The statutory and other prohibitions in the Plea Agreement provide Mr. Ludlow an opportunity to seek relief once he has met certain conditions. Among the relevant conditions are:

"(d) Defendant will not contest and will seek no relief from the employment disabilities described herein prior to 5 years following the date of sentence or the end of imprisonment whichever is the later date. . . .

---

[3] See footnote 2.

6

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

(e) When defendant is permitted to seek relief from the employment disability referred to above, he must demonstrate to the sentencing court that he has been rehabilitated and can be trusted to serve in all prohibited capacities described in Sections 504 or 111 such that defendant will not endanger any organization or its members or participants protected by such statutes.

. . . .

(g) [He will give 30 days notice to the Department of Labor and the USAO.]

*Id.*, ¶ 16(d) at 13-14.

Correspondingly, the government agrees that it will not oppose a "petition" by the defendant for relief from the statutory and other "disability[ies]" if certain conditions are met. *Id.*, ¶ 18 at 18-19. Those conditions essentially restate Mr. Ludlow's obligations under the Plea Agreement and provide as follows:

"(a) Defendant has ceased all prohibited employment or service as required by sections 504 and 111, including but not limited to, ceasing employment or service for the Los Angeles County Federation of Labor or any successor organization;

(b) Defendant has refrained from any violation of state or federal criminal law since the commission of the crime described in this agreement;

(c) Defendant has satisfied other conditions imposed on him by the sentencing court or this agreement, including those imposed by paragraphs 14, 15, and 16, above [dealing with, in summary, pleading guilty, appearing in court as required, surrendering for any sentence, obeying his bond conditions, obeying court orders, not committing crimes, being truthful with Pretrial Services, U.S. Probation and the

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

Court, paying the special assessment, pleading in the state case, stipulating to the agreed resolution of the LACEC case, cooperating in the ongoing investigations, and complying with the prohibitions of sections 504 and 1111] ; and,

(d) a minimum period of 5 years have passed since the date of sentence or end of imprisonment, whichever is later."

*Id.*

Thus, at this point, more than five years after imposition of the sentence of probation, Mr. Ludlow is permitted by statute and agreement to seek relief from the prohibitions or disabilities imposed. Further, assuming the appropriate conditions have been met, the government must not oppose such relief.

Finally, although the statutory scheme and the Plea Agreement require notice to the Department of Labor, as well as federal, state and county prosecutive agencies, at the time of the Plea Agreement the Department of Labor, through its Office of Inspector General ("OIG"), stated in writing that it reviewed the then "proposed" plea agreement, in particular, "the sections relating to debarment under [sections] 504 and . . . 1111." Further, the OIG stated that it, "has no objections to the terms of this agreement as it relates to debarment," and that it, "has been informed that, based upon the circumstances of this case, the U.S. Department of Labor, Office of Labor-Management Standards (OLMS) has no objections to the terms of this agreement as it relates to debarment under [section] 504." *See* attached Exhibit 8, Memorandum from OIG dated March 1, 2006 (also included as Exhibit A to Plea Agreement, Exhibit 7).

IV. SATISFACTION OF CONDITIONS FOR RELIEF

The conditions provided for by statute and under the Plea Agreement for Mr. Ludlow to seek relief and requiring the government not to oppose such relief have all been met.

LAACTIVE-600806258.1

- There is no question that Mr. Ludlow has complied with the terms of his Plea Agreement. He pled guilty to the criminal charges in both case and stipulated to a resolution of the LACEC case. He met all of his obligations to the Court and to the government. And of course, he has not been involved in any other criminal activity.

- There is also no question that Mr. Ludlow has complied with the requirement that he resign from the County Fed and that he not engage in any prohibited capacities. He resigned from the County Fed in March, 2006. *See* Exhibit 9, a redacted copy of Mr. Ludlow's separation agreement from the County Fed. He has totally abstained from any role with a labor organization or other organization covered by the prohibitions of sections 504 and 1111 or by the Plea Agreement. *See* attached Declaration of Martin Gregory Ludlow at ¶ 6.

- There is no question that Mr. Ludlow cooperated in the investigation. His cooperation resulted in him testifying for the prosecution in the state court trial of Ms. Humphries, and she was convicted. *See* Exhibit 10, copy of docket sheet in Ms. Humphries' case.

- Mr. Ludlow completed payment of all of his financial obligations. *See* Exhibits 2, 3, 4A and 4B.

- Mr. Ludlow was sentenced in this case on June 5, 2006. *See* Exhibit 1. So the agreed upon passage of five (5) years occurred as of June 6, 2011.

- As required by the Plea Agreement, copies of this motion have been served by mail on the USAO in Los Angeles and on the

9

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND PLEA AGREEMENT: DECLARATION OF MARTIN GREGORY LUDLOW: EXHIBITS

LAACTIVE-600806258.1

OIG in Washington, D.C., providing at least thirty (30) days notice of this motion. *See* Plea Agreement, Exhibit 7, ¶16(g) at 14; attached Proof of Service.[4] Although the Plea Agreement does not require it, the other involved agencies, the DA and the LACEC were also served.

The Plea Agreement also provides that when seeking this relief, Mr. Ludlow "must demonstrate to the sentencing court that he has been rehabilitated and can be trusted to serve in all prohibited capacities . . . such that [he] will not endanger any organization or its members or participants . . . ." *Id.* ¶16(e) at 14. The provisions of sections 504 and 1111 similarly provide that the court determine that Mr. Ludlow's "service in any capacity referred to in [these statutes] would not be contrary to the purposes of this chapter." *See* 29 U.S.C. §§ 504(a)(5)(B) and 1111(a). Mr. Ludlow's conduct throughout the legal proceedings and since his conviction evince rehabilitation and trust such that the prohibitions should be ended. The ongoing rehabilitative process has permeated every area of his life and is summarized below.

### A.    *Employment*

In addition to supporting his wife and children, Mr. Ludlow faced the task of paying a very large amount in fines and restitution issued by three separate jurisdictions while also performing 2,000 hours of community service. These commitments not only required him to work extraordinarily long hours, but to be disciplined and efficient in his use of time. Between his paid consulting work and his unpaid community service, Mr. Ludlow was engaged in 70 to 80 hours of productive activity each week. His schedule was documented in the reports that he regularly provided to the U.S. Probation Office.

---

[4] See "Statutory Notice Compliance" section below.

---

LAACTIVE-600806258.1

Without exception, Mr. Ludlow earned high recommendations from the companies and non-profit entities that he has served as a consultant since 2006. His major employment projects include:

- *Advancement Project LA (2006 – present).* Mr. Ludlow assisted this non-profit organization as its Senior Policy Fellow and advisor on strategies to reduce gang violence in Los Angeles. He worked closely with the Los Angeles Police Department and Los Angeles County Sheriff's Department in launching an academy for training professional gang intervention workers;

- *Compton Community College District (2008 – present).* Mr. Ludlow was appointed by the Special Trustee of the State of California to assist the District in regaining its accreditation. Compton College had been the first community college in state history to lose its accreditation. In the three years that he has served as advisor to the Special Trustee, the college has begun to rebound and has added nearly 2,000 students to its enrollment since its low point a few years ago;

- *Transportation Opportunity Program (2009 – present).* Mr. Ludlow was pivotal in launching this non-profit truck driver's school located in the Jordan Downs housing project in Watts. The program provides a 4-week, behind-the-wheel skills curriculum offered to 12 students per session. Some ninety trainees have graduated from the academy, all of whom come from disadvantaged inner city backgrounds. About half of the graduates are now successfully employed in the commercial trucking industry;

11
MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

- *Greater LA African American Chamber of Commerce (2007-2009).* For two years Mr. Ludlow advised the Chamber in its efforts to obtain a partnership agreement with Howard University, a historically Black college based in Washington, D.C., to establish an MBA program in South Central Los Angeles.

Apart from these major commitments, Mr. Ludlow has consulted on dozens of other projects. These include his work with a minority-owned engineering and construction firm that wanted to build a boxing arena in the City of Commerce, CA; a position advising the president and CEO of a non-profit organization that helps low-income families to purchase homes; and his work as a public relations advisor to Vasquez & Company, LLP, a certified public accountant and business consulting firm. The founder and Managing Partner, Gilbert Vasquez, has submitted a letter in which he states:

> Prior to his employment with our Firm, Martin was candid about his prohibited solicitation with labor affairs and took full responsibility for the mistakes he made. I find Martin to be resourceful, reliable, and at all times abides by our Firm's professional ethical standards. He is a great asset for our Firm.

*See* Exhibit 11.

Attorney Constance L. Rice, who hired and supervised Mr. Ludlow in his five year consulting relationship with the Advancement Project, writes:

> While scrupulously adhering to the ban on contact with labor and all other constraints from his sentence, in his capacity as an Urban Peace Fellow, Mr. Ludlow aided us in a number of ways. He helped us develop strategies for assisting the new Mayor's Office of Gang Reduction and

12
MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

> Youth Development (GRYD); helped coordinate and maintain our relationships with leaders of law enforcement and officials in fire and rescue departments; helped us launch the gang intervention training platform known as the Urban Peace Academy...
>
> These duties entailed winning the confidence of city workers and police officers with whom we work, inspiring cooperation from other advocates and winning the trust of the Advancement Project Board of Directors and staff.  I observed that it also entailed Mr. Ludlow repeatedly announcing to others that no labor matters could be discussed in his presence, and when during teleconference calls or meetings in which others inadvertently mentioned union matters, I always heard Mr. Ludlow promptly interrupt the speaker and immediately excuse himself from the meeting.  And on the many occasions I observed people greet Mr. Ludlow with a sympathetic deflection of responsibility to others, Mr. Ludlow stopped them and stated that he was the only one responsible for his troubles.

*See* Exhibit 12.

Through his extraordinary effort and hard work, Mr. Ludlow was able to pay off the last of his fine and restitution obligations in February of 2011.

B.    *Community Service*

Mr. Ludlow was ordered to provide two thousand hours of unpaid community service.  With the Court's permission, the vast majority of these volunteer hours were performed at Dorsey High School where he worked closely

with members of the football team. His responsibilities were essentially two-fold: a) to help the youth in their physical training and conditioning and to provide logistical support to enhance the quality of the athletic program, and b) to arrange tutoring and academic assistance for the young men so that they performed well in their classes, while guiding them and their parents in the process of filling out and submitting college applications.

Mr. Ludlow's impact on the program was noticeable immediately. One of the parents, Pamela Andrews, recounts in her letter:

> During football season, Mr. Ludlow was the key in transforming the attitudes, goals and objectives of the young boys on the football team. As a strength and conditioning coach, his day began at 6:00 a.m. Monday through Thursday.
>
> To give these young boys a sense of pride, he transformed the weight room by making sure it was clean and well organized. His attention then turned to providing instruction on the proper technique of lifting. In fact, there were several boys on the team that were homeless at the time, and Mr. Ludlow made it possible for these young boys to have a place to shower before classes.
>
> By giving of his time, the weight room was transformed along with the minds and attitudes of these young men. It created a disciplined atmosphere with the boy's confidence and self-esteem changing before everyone's eyes. They were beginning to believe in themselves at

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

home, in the community, in the class room and ultimately on the football field.

*See* Exhibit 13.

Ms. Andrews' son, Jonathan Franklin, graduated from Dorsey in 2008. He is now starting his senior year at U.C.L.A. where he is a star running back; last year, he gained more yardage than any U.C.L.A. player since 1997.[5]

Mr. Ludlow's duties were unusual in that he had to spend at least as much time away from the playing field as on it. Paul Knox, a history teacher at Dorsey High who has been head coach of their football team for the last 23 years, writes:

He also created a chart to track college bound junior and senior athletes to help them with their applications, forms and necessary paperwork. He then advised these students on preparing for college and often met with or spoke over the phone with the parents to inform them of critical follow-up items… Our coaching staff accepted Martin immediately and appreciated the services that he was providing that previously had been lacking in our program.

*See* Exhibit 15.

Mr. Ludlow completed all 2,000 of his court-ordered hours in July of 2008, just two years after he began. He averaged twenty hours of community service each week. While this is impressive, what occurred next is extraordinary. Once he had fulfilled his court-ordered hours, Mr. Ludlow not only continued his volunteer work at Dorsey High, he expanded it. Head Coach Paul Knox reports in his letter:

---

[5] Mr. Franklin was featured in an article in the *Los Angeles Times* on August 14, 2011 entitled "U.C.L.A.'s Jonathan Franklin is in it for the long run." *See* Exhibit 14

The following year in 2008, Martin approached me about starting a non-profit booster organization that could assist the Dorsey football program. He believed that through supporting the football program, we could keep a highly at-risk group of young men off of the streets and involved in a positive experience, with strong possibilities of college enrollment.

Martin researched the application process for creating a federal and state tax exempt charity and put the entire organization together, including helping me recruit a strong Board of Directors. He acquired and completed all of the necessary forms and documents and assisted us in meeting all deadlines, submission of fees, found the seed money and launched our first Board meeting. Since that time, Martin has been invaluable in maintaining the Booster organization. He has brought in contact with corporate and civic leaders who have seen the value of our program to the youth. The program and support has boosted our graduation rate, to 99% over the past three years and college enrollment rate to nearly 70%.... He continues to stay in touch with most of our students after high school graduation and has followed many of the students through their college graduation and into their career path.

*Id.*

In the three years since he finished his court requirement, Mr. Ludlow has continued to volunteer an average of about 20 hours per week at Dorsey High.

This means that he has contributed another 1,500 volunteer hours *beyond* the 2,000 hours that he was originally ordered to perform. (On June 22, 2008, an article in the *Los Angeles Times* entitled "He makes a difference, finds redemption" followed Martin Ludlow through his daily routine as a volunteer at Dorsey High. *See* Exhibit 16.)

Besides his duties with Dorsey High football, Mr. Ludlow volunteers on an ongoing basis with two other charitable efforts. He serves on the Board of Directors of the Los Angeles Police Department Youth Cadets, which is a version of the Police Explorer program oriented to young people in high school. He was recruited for this volunteer position by LAPD Assistant Chief Earl Paysinger. Mr. Ludlow assists through fundraising and logistical support, and by helping to organize the ceremony for graduating cadets which is held at the Police Academy in Elysian Park.

Since 2007, Mr. Ludlow has also been active in the annual Christmas Fundraiser for Save Africa's Children, a 501(c)(3) non-profit charity that was founded by the pastor of his church to help care for the millions of children in Africa whose parents have died of HIV or AIDS.

Mr. Ludlow's commitment of his time, energy, and skills on behalf of Dorsey Football Boosters and the other charities outlined above, offers tangible evidence of the personal rehabilitation process that he has undergone during the past five years.

### C.    *Financial Oversight and Stewardship*

Beyond simply showing that he has been rehabilitated, the statute requires Mr. Ludlow to show that he can be "trusted to serve" in the capacities described in §§504 and 111. The impeccability of Mr. Ludlow's financial transactions and record-keeping in the past five years are a significant indicator of his trustworthiness. For the three years that Mr. Ludlow was supervised by United

17
MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

States Probation, he was required to submit highly detailed monthly records documenting his income and expenditures. These records were flawlessly maintained and were timely submitted without any controversy.

Both in his paid consulting work and in his volunteer work, Mr. Ludlow has displayed a high level of trust where financial matters are concerned. Genethia Hudley-Hayes, Ph.D., is a former elected member and President of the Board of the Los Angeles Unified School District. She currently serves as President of the Los Angeles Board of Fire Commissioners and as Special Trustee to the Compton Community College District where she supervises and oversees the consulting contract with Martin Ludlow. She writes:

> As a consultant Martin is responsible for tracking all billable hours, monthly tracking system that covers all assignments and weekly meetings with me, Special Trustee. To date Martin has delivered all paperwork and justification in accordance with all rules and regulations relative to the Community College system for reimbursement.
>
> All records have passed the scrutiny of the business office of the CCCD and the year end audit. Martin provides many more hours of his time to the District than his compensated package requires.

*See* Exhibit 17.

Mr. Ludlow has also provided honest and prudent financial stewardship in his work with Dorsey Football Boosters. Coach Knox describes in his letter:

> Since completing his community service hours…[he] has continued to organize major events, including our end-of-season awards banquets, press events, fundraising events

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

and continues to organize "senior college bound" luncheons to help push our graduating seniors into college.

...Martin has been responsible for raising over $60,000 in corporate contributions annually for four years and manages our entire budget of nearly $90,000, which includes student and parent fees and small fundraising efforts. He handles all of our banking which includes deposits, check account and interfacing with the bank and IRS representatives. He has also been responsible for paying all of our bills to scores of local, state and national vendors and is a co-signer on our bank account and credit card. In total, he has managed nearly $300,000 and has lead the effort to raise nearly 60% of this revenue. At the urging of the Board of Directors, he accepted and has maintained the role as the unpaid, voluntary Executive Director since the organization's inception.

*See* Exhibit 15.

D.    *Acknowledgment of Responsibility and Contrition*

During the past five years, Mr. Ludlow has gone to great lengths to observe the prohibition against certain activities or contacts with labor on his part. This inevitably requires him to bring up the subject of his federal conviction and explain to others what occurred. Rather than make excuses or attempt to shift blame to others, he has unwaveringly assumed responsibility for his mistakes and has freely discussed with others the lessons that he has learned. Genethia Hudley-Hayes writes:

LAACTIVE-600806258.1

> As a former elected official, I am so respectful of the way in which Martin Ludlow accepted responsibility for his actions, his transgressions, and his shortcomings. There was no behavior that suggested at any time that he was not cognizant of his having failings as an elected official. This is not the usual picture we all have of fallen leaders who obfuscate until that posture is not longer possible. I appreciate his personal recovery efforts and find that my work has benefited from his honesty and integrity.

*See* Exhibit 17.

Dr. Hudley-Hayes further notes in her letter that Martin Ludlow has "continual[ly] recused himself from any conversations involving labor, labor management negotiation, and has been candid about his legal restrictions in this area." *Id.*

Coach Paul Knox observes:

> It is common knowledge that Martin accepts responsibility for the mistakes he's made, but has used this as a way to connect with our young men on how to live your life and how the consequences of your actions can impact your future. He has been nothing but a positive influence and role-model for the young men and women in our program…

*See* Exhibit 15.

Constance Rice adds:

> I have watched Mr. Ludlow closely during the past five years as he fulfilled the terms of his sentences and followed the orders of this Court. He has done so

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

diligently, with determination and with full

acknowledgment of his responsibility. More

impressively, he has done so with humility and grace.

I am certain that Mr. Ludlow has learned all of the

lessons possible from his case, and that, from here on out,

he will scrupulously adhere to all rules.

*See* Exhibit 12.

Martin Ludlow has consistently taken the high road and has conducted himself in a positive manner under often difficult conditions in the community. He has, without question, demonstrated his rehabilitation and has shown that he can be trusted to serve. If the prohibition is lifted and Mr. Ludlow is allowed to resume contact with individuals and entities associated with organized labor, he will do nothing to discredit or endanger any labor organization, its members or participants. Quite the opposite, restoration of his right to work with labor would greatly enhance Mr. Ludlow's ability to do good for others. For example, while he has played a key role in development of the non-profit truck driving school in Watts, he has had to avoid contact with the truck drivers union. If the relief being sought is granted, Mr. Ludlow will be able to speak before the Teamsters and their affiliated locals and enlist their help in expanding the job training and placement programs available for minority youth.

In a similar vein, Mr. Ludlow's consulting role at Compton Community College, while extremely fruitful, has been somewhat hindered by his inability to advise the college on personnel or labor issues.

Even in the sphere of his charitable work, Mr. Ludlow could make a greater contribution if he were not prevented from reaching out to his many contacts in the labor unions to solicit participation and financial support for projects such as Dorsey Football Boosters. Elimination of this restriction would also be greatly

21
MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT: DECLARATION OF MARTIN GREGORY LUDLOW: EXHIBITS

LAACTIVE-600806258.1

appreciated by Mr. Ludlow and his family, as it would remove the last formal sanction that he has operated under since 2006 and allow him to more fully reintegrate himself back into the larger community.

In sum, Mr. Ludlow's efforts and accomplishments in the five years since the sentence was imposed clearly demonstrate that he has been rehabilitated, that he can be trusted to serve, and that he will not endanger any labor entity if the bar on his participation is lifted.

## V.    STATUTORY NOTICE COMPLIANCE

In addition to the notice requirement in the Plea Agreement, which, as indicated above, has been satisfied by serving the USAO and the OIG at the Department of Labor, the statutory requirement in sections 504 and 1111 is that "the court . . . shall give notice to such proceeding by certified mail to the Secretary of Labor and to State, county, and Federal prosecuting officials in the jurisdiction . . . in which such person was convicted." Mr. Ludlow, through his counsel, has submitted, under separate cover, an *ex parte* application, along with a proposed written notice, envelopes and certified mail forms, for notice to be sent by this Court's Deputy Courtroom Clerk to the appropriate officials.

## VI.    CONCLUSION

For the reasons stated above, Mr. Ludlow requests that this Court issue the separately-lodged order granting relief from the statutory and plea agreement prohibitions on serving in certain capacities with a labor organization or employee benefit plan and other organizations.

Dated:  August 25, 2011            Respectfully submitted,

CROWELL & MORING LLP

*/s/ John D. Vandevelde*
By:  John D. Vandevelde
Attorneys for Defendant
Martin Ludlow

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1

## DECLARATION OF MARTIN GREGORY LUDLOW

I, Martin Gregory Ludlow, hereby state and declare as follows:

1.     I am the defendant in the case entitled *United States v. Martin Gregory Ludlow*, No. CR-06-164-R (hereinafter "this case"), in the United States District Court for the Central District of California.

2.     This declaration is made in support of the "Motion for Relief From Prohibitions Under 29 U.S.C. § § 504 and 1111 and Plea Agreement" (hereinafter "Motion for Relief") being filed with this declaration. The facts set forth in this declaration are true of my own knowledge except as otherwise described herein.

3.     I entered into a Plea Agreement attached to this Motion for Relief as Exhibit 7.  I have reviewed again the Plea Agreement, specifically the requirements imposed on me in that agreement.  I have complied with all of those requirements, including the general requirements of making all of my court appearances, cooperating with the government in its investigation of this matter and related matters including testifying in the state court trial of my codefendant in this case, Janett Humphries, entering guilty pleas in the this case and in the state prosecution in Los Angeles Superior Court in *People v. Martin Ludlow*, No. BA298943 (hereinafter "state case"), and settling the accusation made against me by the Los Angeles City Ethics Commission in *In the Matter of Martin G. Ludlow and Martin Ludlow for City Council*, CEC Case No. 2004-20 (hereinafter "LACEC case").

4.     I have completed probation in this case and the state case, completing my community service and paying all amounts due in restitution, special assessments and penalties in those cases and the LACEC case.  My probation was terminated in this case and the state case.

5.     One of the consequences of my Plea Agreement and the applicable statutes was that I could not be employed in various capacities by a labor

organization and certain other organizations as set forth in 29 U.S.C. §§ 504 and 1111. At the time of the agreement I was employed as the Executive Secretary-Treasurer of the Los Angeles County Federation of Labor AFL-CIO (hereinafter "County Fed"). On March 3, 2006, I terminated my position with the County Fed pursuant to an agreement, a copy of which is attached as Exhibit 9.

6. After reviewing the Plea Agreement, specifically the provisions prohibiting certain employment and service, and reviewing the prohibitory provisions of 29 U.S.C. §§ 504 and 1111, I can confirm that since being sentenced in this case I have not been employed in or otherwise served in any of the capacities described in the Plea Agreement or 29 U.S.C. §§ 504 and 1111. I have carefully avoided any involvement in labor matters when such issues have arisen in the course of my consulting and other activities. I have turned down consulting opportunities that I knew would involve labor matters. And when labor matters have come up unexpectedly in my consulting work, my practice has been to very clearly state that I am prohibited from participating in such matters and I remove myself from any meetings or communications dealing with such matters.

7. I have reviewed the motion for relief, in particular the portion in section IV that describes my employment, community service, financial and organizational oversight, and my repeated acknowledgment of responsibility. That information is accurate and I could testify to those matters.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this 24th day of August, 2011 at Los Angeles, California.

_____
Martin Gregory Ludlow

MOTION FOR RELIEF FROM PROHIBITIONS UNDER 29 U.S.C. §§ 504 AND 1111 AND
PLEA AGREEMENT; DECLARATION OF MARTIN GREGORY LUDLOW; EXHIBITS

LAACTIVE-600806258.1